# DISTRICT OF COLUMBIA *v.* GLASS.

TAXATION; ASSESSMENT; RECOVERY OF TAX PAID UNDER PROTEST.

1. Under the act of Congress of July 1, 1902 [32 Stat. at L. 590, chap. 1352], providing that building associations should pay a tax of "4 per centum per annum on their gross earnings for the preceding year ending June 30th," and the act of Congress of April 28, 1904 [33 Stat. at L. 563, chap. 1815], providing that building associations should pay a tax of "2 per centum per annum on their entire gross earnings for the preceding year ending June 30th," and that such tax should be payable in May, 1904, and repealing all inconsistent acts, a building association was, in 1904, liable to a tax of but 2 per cent on its gross earnings for the year ending June 30th, 1903.

2. Where an act of Congress fixing a rate of taxation at 4 per cent is repealed, and a 2 per cent rate substituted, the fact that the assessment on the tax books, made under the old law, remains at 4 per cent, does not operate to continue the latter rate in force, for the acts of the assessors do not limit or vary the power of Congress. No other assessment than that made by the statute is necessary to determine the extent of the taxpayers' liability.

3. A tax paid under protest to prevent a threatened seizure of the taxpayers' property by the officer may be recovered back when it appears that the collection of the tax was unauthorized by law. (Following *District of Columbia* v. *Chapman*, 25 App. D. C. 98.)

No. 1571.   Submitted May 2, 1906.   Decided June 5, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action to recover a tax paid under protest.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

The plaintiff [the Perpetual Building Association, a voluntary association, by its president and treasurer] brought this suit to recover a sum of money which it claimed was an overpayment of taxes exacted by the District of Columbia, and which sum it had paid under protest, with reservation of all its rights and remedies, claiming that it made the payment under duress. The defendant demurred to the plaintiff's declaration. The court below overruled the demurrer and entered judgment for the plaintiff for the amount claimed in the declaration, and costs. The defendant appealed to this court.

The declaration states the following case: Congress, by the general appropriation act providing for the expenses of the government of the District of Columbia for the fiscal year ending June 30th, 1903, approved July 1st, 1902 (32 Stat. at L. 590, chap. 1352), provided, in secs. 6 and 7, a method of taxation of personal property, and, among other things, enacted that "building associations shall pay to the collector of taxes of the District of Columbia 4 per centum per annum on their gross earnings for the preceding year ending June 30th." The plaintiff, on August 1st, 1903, made due return of its gross earnings for the year ending June 30th, 1903, to the assessor of the District in accordance with law, and returned as such the sum of $108,252.91, and was subject to the assessment and levy of a tax of 4 per cent upon such gross earnings for the fiscal year ending June 30th, 1904. This statute provided that said tax should become due and payable in the month of May, 1904, subject to a penalty, and to distraint of plaintiff's goods and chattels in default of payment of said tax during May, 1904. The statute further provided that taxes upon personal property "shall be due, payable, and collectable at the same time and times as the general tax on real estate in said District, and shall be subject to the same penalties for nonpayment thereof until distraint or sale as hereinbefore provided." Taxes on real estate were payable in one payment in May, or in two equal instalments in May and November, of each year, in the discretion of the taxpayer.

Congress, by an act entitled "An Act to Amend the Law

Relating to Taxation in the District of Columbia," approved April 28th, 1904 (33 Stat. at L. 563, chap. 1815), in sec. 2 of said act, amended sec. 6 of the law for the taxation of personal property, before mentioned, in many important particulars, and, among others, sec. 6, paragraph 9, was amended so as to read as follows: "Building associations in the District of Columbia shall pay to the collector of taxes of the District of Columbia 2 per centum per annum on their entire gross earnings for the preceding year ending June 30th."

By sec. 3 of this act of April 28th, 1904, it was provided "that all acts and parts of acts inconsistent with the provisions of this act are hereby repealed." The plaintiff claimed that by virtue of this act the rate of taxation upon its gross earnings mentioned for the year ending June 30th, 1903, was reduced to 2 per cent per annum, and during May, 1904, the plaintiff applied to the assessor of the District to make proper entry in its tax books to show that such gross earnings for the fiscal year ending June 30th, 1904, were taxable at the rate of 2 per cent per annum, and to show the amount of tax to be $2,165.06 for said fiscal year. The assessor refused, and the plaintiff tendered the last-mentioned sum, but the defendant refused to accept less than 4 per cent upon such gross earnings, and delivered a bill for $4,330.12, a tax of 4 per cent on the gross earnings mentioned, with notice to the plaintiff to pay the same to the collector of taxes of said District during May, 1904, under pain of a certain penalty prescribed by law. The plaintiff still refused to pay more than 2 per cent. The collector of taxes notified the plaintiff that, unless it immediately paid $4,416.72, being 4 per cent on such gross receipts and the penalty that had accrued thereon, he would forthwith proceed to distrain and thereby enforce the collection, and on July 8th, 1904, the plaintiff paid the last-named sum under protest as before mentioned, and solely to avoid the distraint and sale of its property, and the plaintiff here sues to recover $2,251.66 with interest and costs.

*Mr. E. H. Thomas,* Corporation Counsel, and *Mr. F. H. Stephens,* Assistant, for the appellant, the District of Columbia.

*Mr. Charles F. Benjamin* and *Mr. Aldis B. Browne* for the appellees.

Mr. Justice McComas delivered the opinion of the Court:

We find little difficulty in determining the matter in dispute. The act of April 28th, 1904, repealed the tax upon building associations prescribed in the act of July 1st, 1902. It substituted a new provision for their taxation. The slight verbal changes in the new provision are immaterial. By this act Congress directed, speaking from its date, April 28th, 1904, that building associations should pay the collector of taxes of this District "2 per centum per annum on their entire gross earnings *for the preceding year ending June 30th.*" This means that the plaintiff became subject to a tax of 2 per cent on $108,252.91, its entire gross earnings for the preceding year ending June 30th, 1903. There can be no doubt that in respect of building associations the act we are considering speaks from its date, April 28th, 1904. The tax was payable by the plaintiff in May of that year. The 4 per cent rate had been repealed. The 2 per cent rate had been enacted. The plaintiff tendered the lawful tax in May, 1904, and the defendant should have accepted such lawful tax. There is no room for discussing whether the act of April 28th, 1904, was in its operation retroactive or prospective in respect of the tax on building associations. It went into effect on the day of its approval so far as building associations are concerned. In amending sec. 6 it reduced the tax upon savings banks, and carefully provided that the amendment should have effect hereafter, beginning with the fiscal year July 1st, 1904, and made other amendments to take effect hereafter, and certain amendments are prospective. Congress intended to relieve building associations from a tax it deemed too onerous upon them, and it plainly expressed its purpose to relieve them by an absolute repeal of the 4 per cent rate before the time that rate was payable, and substituted a 2 per cent rate, and in terms applied that rate to the entire gross earnings of building associations for the preceding year ending June 30th, 1903.

The defendant's argument that the act which went into effect April 28th, 1904, should be construed to tax gross earnings for the *preceding* year ending June 30th, 1904, asks us to legislate and to alter and amend a plain and clear enactment which admits of no doubt. It nowhere appears in this record that the gross earnings returned in this case were not the entire gross earnings. It is not significant that the assessment on the tax books, made under the law as it was, remained at 4 per cent. The acts of assessors do not limit or vary the power of Congress. Indeed, in both acts when the return of gross earnings was duly made and its verity not questioned, there was no difficulty in respect of assessment. As the Supreme Court said in another tax case: "No other assessment than that made by the statute was necessary to determine the extent of the bank's liability. An assessment is only determining the value of the thing taxed, and the amount of the tax required of each individual. It may be made by designated officers or by the law itself. In the present case the statute required every savings bank to pay a tax of 5 per cent on all undistributed earnings made, or added during the year to their contingent funds. There was no occasion or room for any other assessment. This was a charge of a certain sum upon the bank, and without more it made the bank a debtor." *Dollar Sav. Bank* v. *United States,* 19 Wall. 227, 240, 22 L. ed. 80, 82.

The learned court below committed no error in deciding that the act of April 28th, 1904, was not intended to operate prospectively as the defendant contended by its demurrer.

The court below did not err in deciding that the payment of the money claimed in this action was an involuntary payment, and that the appellee was therefore entitled to recover. We have stated the circumstances under which this payment was made. "A payment made to relieve the person from arrest or the goods from seizure is a payment on compulsion; and so is the payment to prevent a seizure when it is threatened. So with still greater reason is the payment which the officer secures by making sale of goods seized. But it is not necessary for the taxpayer to wait for his goods to be sold, or even to be seized.

If the officer calls upon the person taxed, and 'demands a sum of money under a warrant directing him to enforce it, the party of whom he demands it may fairly assume that, if he seeks to act under the warrant at all, he will make it effectual. The demand itself is equivalent to a service of the writ on the person.' " 2 Cooley, Taxn. 3d ed. 1505. And Judge Dillon says: "The payment by the plaintiff must have been made *upon compulsion,* as, for example, to prevent the immediate seizure of his goods or the arrest of the person, *and not voluntary."* 2 Dill. Mun. Corp. 4th ed. sec. 940. "Money paid by a person *to prevent an illegal seizure* of his person or property by an officer claiming authority to seize the same    *    *    *    may be recovered back in an action for money had and received, on the ground that the payment was compulsory or by duress or extortion." Id. sec. 942. These authorities were approved by this court, and it was held in *District of Columbia* v. *Chapman,* 25 App. D. C. 98, that a payment of money made under circumstances like those under which the payment in this case was made entitled the plaintiff in such case to maintain an action like this for its recovery. The learned court below committed no error in this respect.

The judgment below must be affirmed, with costs, and it is so ordered.                                        *Affirmed.*